IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | D.C. Number: CR F 05-0372 AWI |
| Plaintiff-Appellee, ) | Mag. Number:05-mj-0042 WMW |
| v. ) | |
| BLAIRE I. GUTHRIE, ) | ORDER ON APPELLANT'S APPEAL OF MOTION TO DISMISS INDICTMENT |
| Defendant-Appellant. ) | |

This is an appeal from a conviction in magistrate court for misappropriation of property and conspiracy to misappropriate property occurring at Yosemite National Park ("the Park"). Appellant Blaire Guthrie ("Guthrie") entered a conditional plea of guilty, but reserved the right to challenge the magistrate judge's denial of Guthrie's motion to dismiss. The motion to dismiss was based on an allegedly unreasonable and unnecessary delay of approximately 28 hours before Guthrie was presented to a magistrate judge. Guthrie argues that the motion to dismiss should have been granted, that her conviction should be reversed, and that the charges against her be dismissed. Alternatively in her conclusion, Guthrie argues that all statements made should be suppressed. Guthrie's conviction will be affirmed.

**SCOPE OF REVIEW**

An appeal from a criminal conviction imposed by a Magistrate Judge lies with a "judge of

the district court and must first be brought in the district court before prosecution in the court of appeals." United States v. Soolook, 987 F.2d 574, 575 (9th Cir. 1993); see also 18 U.S.C. § 3402. The district court's review of the magistrate's judgment is governed by the same standards as an appeal from a judgment of a district court to the court of appeals. Fed. R. Crim. P. 58(g)(2)(D);United States v. McFarland, 369 F.Supp.2d 54, 56-57 (D. Me. 2005); United States v. Fautanu, 751 F.Supp. 1420, 1421 (D. Haw. 1990); United States v. Ramirez, 555 F.Supp. 736, 738-39 (E.D. Cal. 1983). In other words, the district court "is to apply the same scope of review as a United States Circuit Court of Appeals would apply in considering an appeal of a judgment from a United States District Court." United States v. Charrington, 285 F. Supp. 2d 1063, 1066 (S.D. Ohio 2003). In the Ninth Circuit, the appellate court may affirm the district court's decision on any grounds supported by the record. United States v. Cortez-Arias, 403 F.3d 1111, 1114 n.7 (9th Cir. 2005), *as amended by*, 425 F.3d 547 (9th Cir. 2005); United States v. Allen, 153 F.3d 1037, 1045 (9th Cir. 1998).

## BACKGROUND

On April 12, 2005, at approximately 10:00 a.m., Guthrie was arrested by National Park Service law enforcement rangers without a warrant at the Curry Village gift shop for shoplifting and stealing. See E.R. at 47-48, 52-53. Gurthrie worked at the giftshop as a cashier and the giftshop manager had suspected Guthrie of stealing from her register. See id. The manager was monitoring Guthrie's transactions through a computer and detected four instances of theft between 8:00 a.m. and 9:00 a.m. See id. The manager contacted security and while he was waiting, observed Guthrie leave her register, take a $25 T-shirt from the retail area, and place the shirt in a bag. See id. Guthrie then handed the bag to Kimberly Williams, who in turn put the bag in her purse and then left the store without paying for the shirt. See id. The manager then made a citizen arrest of Guthrie and Williams. See id. Rangers arrived and accepted the manager's citizen arrests. See id. Ranger Visnovske took custody of Williams and Ranger

Horne took custody of Guthrie. See id.  The rangers and Guthrie and Williams eventually left the store and arrived at the Yosemite Holding Facility at approximately 11:00 a.m. See id.

By 12:00 p.m., Guthrie had been booked and most of the administrative steps had been completed. See E.R. at 48, 53.  Guthrie was taken to an interview room and, at 12:01 p.m., Guthrie signed a *Miranda* waiver. See id.  Guthrie admitted to the events surrounding her arrest and explained how she would use the "F5" key to take money from the register. See id.  However, the interrogation also covered incidents unrelated to the current misappropriation and shoplifting episode. See id. at 49, 53-54.  Guthrie had been asked why she took money from the register and she indicated that she used the money for drugs and travel. See id.  According to the rangers, Guthrie made unsolicited and incriminating comments. See id. at 49, 54.  According to argument before the magistrate judge, Guthrie was questioned about drug rings in the Park and prostitution activities at the Ahwahnee Hotel. See id. at 82-83.  Guthrie's interview finally concluded at approximately 1:30 p.m. See E.R. at 49, 54.  Guthrie was returned to jail for further processing. See id.  The rangers then questioned Williams from approximately 2:30 p.m. to 3:00 p.m. See id.  At the conclusion of her interview, Guthrie was not transported to the United States Magistrate Judge for the Park, who was only a few hundred yards away and still in session on its afternoon duty docket.

On April 12, 2005, the Park magistrate court convened at 10:00 a.m. and 1:30 p.m. to conduct arraignments. See E.R. at 75.  There is only one magistrate judge in the Park, and on April 12, 2005, due to a family emergency, Magistrate Judge Wunderlich left the Park early at approximately 2:30 p.m., and was unavailable for the rest of the day. See id. at 75-76.  The rangers did not attempt to locate another magistrate, for example a magistrate or district judge in Fresno, but held Williams and Guthrie overnight.  The government representative of the National Park Service and a federal public defender were both present at the 10:00 a.m. and 1:30 p.m. court sessions. See E.R. at 4.  At 3:30 p.m., Guthrie was told that she would be held overnight. See id.  Guthrie's Federal Defender was not informed about Guthrie until approximately 5:00

p.m., despite that Defender being present at the holding facility at both 3:30 p.m. and 4:00 p.m. See id.

Guthrie was charged with two counts of misappropriation of property (one count involving the T-Shirt and a second involving the $200) in violation of 36 C.F.R. §§ 2.30(a)(1), (a)(3), and conspiracy to misappropriate property in violation of 18 U.S.C. § 371. See E.R. at 11-18.

On June 24, 2005, Guthrie filed a motion to dismiss the citation against her and argued that the citation should be dismissed with prejudice because the extended delay in presenting her to the magistrate violated the Fourth Amendment, Federal Rule of Criminal Procedure Rule 5(a) ("Rule 5") and *Mallory v. United States*, 354 U.S. 449 (1957), the local Criminal Justice Act plan ("local CJA Plan"), and the Fourth Amendment. In a footnote, Guthrie requested in the alternative that statements made during her pre-presentment interrogation. A hearing on Guthrie's motion to dismiss was held on August 5, 2005, and the Magistrate Judge denied the motion at the hearing. On September 26, 2005, Guthrie entered a conditional plea agreement. Guthrie pled guilty to misappropriation of $200 in violation of 36 C.F.R. § 2.30(a)(1), and misdemeanor conspiracy to misappropriate property in violation of 18 U.S.C. § 371. See E.R. at 57-60. The plea agreement provided that Guthrie reserved her right to appeal the denial of her motion to dismiss and, if she prevailed, she could withdraw her guilty pleas. See id. at 58. On September 27, 2005, the magistrate court sentenced Guthrie in accordance with the plea bargain: six month summary probation, a $380 fine, two $10 statutory assessments, and two days in custody with credit for two days time served. See id. at 91.

Guthrie now appeals the denial of the motion to dismiss. Due to an apparent incorrect e-mail address, the Government did not receive notification of Guthrie's appeal. In light of the incorrect e-mail, this Court granted the Government's request to file a late opposition. That opposition has now been received. No reply was filed by Guthrie. For the reasons that follow, Guthrie's conviction will be affirmed.

4

# ARGUMENTS

*Appellant's Argument*

Guthrie argues that she was unreasonably and unnecessarily detained 28 hours before she was presented to a magistrate judge. Rule 5 requires that an arrested person be taken to a judicial officer without unnecessary delay. Under *Mallory*, an arrested individual must be arraigned as quickly as possible so that he may be advised of his rights and probable cause may be determined. Similarly, the Fourth Amendment requires that anyone arrested for a crime without a warrant is entitled to a prompt judicial review of probable cause. Under *McLaughlin*, there is a presumption of constitutionality for presentment delays of under 48-hours, but that presumption may be overcome. Finally, the CJA Plan for the Eastern District of California requires that government prosecutors ask those in custody whether they are financially able to representation and notify the Federal Public Defender Officer if the answer is no. The Public Defender is then to meet with the individual and if appointment seems likely, to arrange to have the person promptly presented to a magistrate judge for determination of financial eligibility and appointment of counsel.

Here, the delay in presentation was deliberate. The delay was unreasonable because it was for the purpose of interrogation and obtaining confessions, it occurred during the scheduled time for arraignments, caused Guthrie to miss the opportunity to be arraigned on April 12, and arraignments were occurring two buildings away from where Guthrie was being held.

Guthrie argues that the statements obtained from her during the delay are not critical to the Government's case. Further, there is an on-going failure to present defendants to the magistrate in the Park. In order to assure prompt presentment requirements are not abused, reversal of the conviction and dismissal with prejudice is the only adequate remedy. Otherwise, Guthrie will be left without a remedy.

In the last sentence of her opening brief under the conclusion section, Guthrie states, in the alternative, the case should be remanded with instructions to exclude from evidence any and

5

all incriminating statements alleged to have been made by her during the period. This argument is not developed in Guthrie's appellant brief. However, in a footnote of her motion to dismiss, Guthrie stated that, in the alternative, the court should find that her confession was involuntary and inadmissible under 18 U.S.C. § 3501(c) due to the extended nature of the interrogation on unrelated charges, the relative minor nature of the offenses, and the violation of the CJA Plan.

*Appellant's Opposition*

The government basically argues that the delay was reasonable under Rule 5 because it was not for the purpose of obtaining evidence for the offenses charged and was in part caused by logistics/the administrative process of the Park holding facility, Guthrie was presented within the 48-hour rule of *McLaughlin*, suppression and not dismissal is the remedy for violations of Rule 5, and that Guthrie validly waived her rights following *Miranda* warnings.

*Discussion*

The remedy for a violation of the Fourth Amendment's presentment requirement[1] and the rule of *McLaughlin*[2] is exclusion of evidence if it was "fruit of the poisonous tree." Anderson v. Calderon, 232 F.3d 1053, 1071-72 (9th Cir. 2000), *overruled in part on other grounds*, Bittaker v. Woodford, 331 F.3d 715, 728 (9th Cir. 2003); United States v. Arnett, 2005 U.S. Dist. LEXIS 23741, 12-13 (E.D. Cal. 2005). Similarly, the general remedy for a violation of Rule of Criminal Procedure 5[3] and *Mallory* is exclusion of the evidence. See United States v. Blue, 384 U.S. 251,

---

[1] The Fourth Amendment reads, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. The Supreme Court has held that the Fourth Amendment requires prompt judicial determination of probable cause as a prerequisite to an extended pretrial detention following a warrantless arrest, i.e. individuals must be presented or brought before magistrates for a determination of probable cause. See County of Riverside v. McLaughlin, 500 U.S. 44, 47, 53 (1991); Gerstein v. Pugh, 420 U.S. 103, 114 (1979).

[2] *County of Riverside v. McLaughlin*, 500 U.S. 44, 56-57 (1991) created a presumption that delays in the presentment of arrestees of less than 48-hours are presumptively valid under the Fourth Amendment.

[3] Rule 5 in relevant part provides, "A person making an arrest within the United States must take the defendant without unnecessary delay before a magistrate judge, or before a state or local judicial officer as Rule 5(c) provides, unless a statute provides otherwise." Fed. R. Crim. Pro. 5(a)(1)(A).

255 (U.S. 1966) (citing *Mallory* as an example of applying exclusionary rule); United States v. Cardenas, 410 F.3d 287, 293 (5th Cir. 2005); United States v. Dyer, 325 F.3d 464, 470 n.2 (3d Cir. 2003); United States v. Alvarez-Sanchez, 975 F.2d 1396, 1398 (9th Cir. 1992), *rev'd on other grounds*, 511 U.S. 350 (1994); Studley, 783 F.2d at 937 n.2; Bayless v. United States, 381 F.2d 67, 70-71 (9th Cir. 1967); United States v. Savchenko, 201 F.R.D. 503, 506-07 (S.D. Cal. 2001). Some authority suggests that dismissal for extreme or egregious violations of Rule 5 may be appropriate. See United States v. Osunde, 638 F.Supp. 171, 176-77 (N.D. Cal. 1986) (granting dismissal where defendant was held for 106 days before presentment); cf. United States v. Jernigan, 582 F.2d 1211, 1214 (9th Cir. 1978) (despite deliberate delay, refusing to grant drastic remedy of reversal of conviction and dismissal of indictment given presentment after 3 to 4 days from arrest); but see Savchenko, 201 F.R.D. at 507-08.

Assuming that dismissal is an available remedy and that Rule 5 was violated, the facts of this case do not show an extreme or egregious violation of Rule 5.[4] Although not dispositive, it is undisputed that Guthrie was presented to a judicial officer within 48 hours of her arrest. See E.R. at 7; cf. McLaughlin, 500 U.S. at 56-57. Further, the evidence does not suggest that the rangers were aware that the Park's Magistrate Judge would not be available after 2:30 p.m. on April 12, 2005, since the Magistrate Judge had to leave early due to a family emergency. See ER at 75-76. The approximately 28 hour delay is nowhere near the 106 day delay in *Osunde* and is well less than the 3 to 4 day deliberate delay in *Jernigan* that was found to not warrant dismissal. Cf. Jernigan, 582 F.2d at 1214; Osunde, 638 F.Supp. at 176-77. Given that suppression of evidence is the general remedy for Fourth Amendment and Rule 5/*Mallory* violations, and that

---

[4] The Court notes that the Government cites *United States v. Frazier*, 419 F.2d 161, 1166 (D.C. Cir. 1969) for the proposition that a *Miranda* waiver also waives Rule 5/*Mallory* rights. The Ninth Circuit has also held that a valid *Miranda* waiver also waives Rule 5/*Mallory* rights. See United States v. Childs, 944 F.2d 491, 496 (9th Cir. 1991); United States v. Binder, 769 F.2d 595, 598 (9th Cir. 1985), *disapproved on other grounds*, United States v. Morales, 108 F.3d 1031 (9th Cir. 1997); United States v. Indian Boy X, 565 F.2d 585, 591 (9th Cir. 1977); United States v. Mandley, 502 F.2d 1103, 1105 (9th Cir. 1974); United States v. Woods, 468 F.2d 1024, 1026 (9th Cir. 1972); United States v. Howell, 470 F.2d 1064, 1067 n.1 (9th Cir. 1972); United States v. Cluchette, 465 F.2d 749, 755 (9th Cir. 1972); United States v. Lopez, 450 F.2d 169, 170 (9th Cir. 1971). Neither the Government nor Guthrie cite or discuss any of these cases.

7

there is an absence of extreme or egregious delay, the Magistrate Judge properly denied Guthrie's requested dismissal.[5]

With respect to any violation of the local CJA Plan, the Court does not find that this argument has been adequately developed.[6] Neither party cites authority for what the proper remedy may be for such a violation. Guthrie does not argue that any Sixth Amendment rights have been violated. In the context of a violation of the Sixth Amendment right to counsel, such "deprivations are subject to the general rule that remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests." United States v. Morrison, 449 U.S. 361, 364 (U.S. 1981). The general remedy is to suppress the evidence or to order a new trial if the evidence has been wrongfully admitted and the defendant convicted. Id. at 365. "[A]bsent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though the violation may have been deliberate." Id. If the normal remedy for violations of the Fourth Amendment, the Sixth Amendment, and Rule 5 is exclusion of evidence and not dismissal of a case, see id.; Blue, 384 U.S. at 255; Anderson, 232 F.3d at 1071-72; Studley, 783 F.2d at 937 n.2, then the Court does

---

[5]In *Jernigan*, the Ninth Circuit did state, "Our reading of the record persuades us that agent Horn deliberately delayed arresting Jernigan until a time when, as he well knew, Jernigan would not be able to go before a magistrate, have bail reset, and be released. We deplore this kind of behavior, and its repetition may lead us to invoke the drastic remedy, dismissal of the indictment, that Jernigan asks us to invoke." However, Guthrie has not presented evidence or shown the type of deliberate conduct condemned in *Jernigan*.

[6]The Eastern District of California CJA Plan provision relied upon by Guthrie is General Order No. 323 at Ch. IX(A) and may be found at http://www.caed.circ9.dcn/newintranet/Documents/General_orders/323.pdf. This portion the local CJA Plan reads:

Federal law enforcement and prosecutorial agencies, probation officers, and pretrial services officers in this district, and those acting on their behalf, shall promptly ask any person who is in custody, or who otherwise may be entitled to counsel under the CJA, whether he or she is financially able to secure representation, and shall, in such cases in which the person indicates that he or she is not able, notify the Federal Public Defender Office, which shall assign a lawyer to discuss with the person the right to representation and right to appointed counsel, and if appointment of counsel seems likely, assist in the completion of financial affidavit (CJA Form 23) and arrange to have the person promptly presented before a magistrate judge of this Court for determination of financial eligibility and appointment of counsel.

not find that dismissal would be an appropriate remedy for a violation the local CJA Plan.[7]

With respect to Guthrie's alternative request for suppression,[8] the argument is only one sentence at the end of her appellant brief. Nevertheless, the argument was more developed in the motion to dismiss and at the hearing on the motion to dismiss. The motion to dismiss argued that suppression of statements should occur because her confession was involuntary and inadmissible under 18 U.S.C. § 3501(c) due to the extended nature of the interrogation on unrelated misdeeds, the relative minor nature of the offenses, and the violation of the CJA Plan. At the motion to dismiss hearing, the following exchange occurred:

**Mr. Cohen:** I think that under the specific circumstances of this particular detention, which is why we're arguing it here, whereas we're not arguing it every single time it happens, it was unreasonable, and the result should be if not outright dismissal, which I think Ms. Leonetti acknowledges in her papers is a fairly extreme sanction, at least suppression of any statements that Miss Guthrie or Miss Williams may have made during their custodial interrogation.[9]

**The Court:** You're referring to statements made regarding a larger theft-related rings or --

**Mr. Cohen:** Yes, Your Honor.

E.R. at 73. Thus, as argued before the Magistrate Judge, the alternative suppression request appears to have dealt with the questioning of extraneous crimes. However, Guthrie pled guilty to misappropriation of $200 and conspiracy to misappropriate a T-shirt, and not to any "extraneous crimes" such as a larger theft ring or drugs or prostitution. See E.R. at 57-60. Arguments or

---

[7]Also, it is not clear that the CJA Plan was violated. The Federal Defender's Office was informed in the afternoon of April 12, 2005, that Guthrie was in custody, see E.R. at 4, Guthrie appears to have met with a Federal Defender at 5:00 p.m. on April 12, 2005, see id., she was represented by a Federal Defender throughout the proceedings before the Park magistrate, and continues to be represented by a Federal Defender. Moreover, at 12:01 p.m., at a time when most of the administrative procedures had been completed, Guthrie signed a *Miranda* waiver which informed her that a counsel would be appointed if she could not afford one. See id. at 43, 48, 53.

[8]In reviewing a denial of a motion to suppress after conviction, the evidence is viewed in the light most favorable to the government, and if no findings of fact were made by the lower court, the reviewing court will uphold the denial of the motion to suppress if there is a reasonable view of the evidence that will sustain it. See United States v. Davis, 332 F.3d 1163, 1167 (9th Cir. 2003); United States v. Henry, 615 F.2d 1223, 1230 (9th Cir. 1980).

[9]Ms. Leonetti is the Federal Defender who filed the motion to dismiss and who is Guthrie's counsel on this appeal. Mr. Cohen, also from the Federal Defender's Office, appeared for, and argued the motion on behalf of, Guthrie at the hearing. See E.R. at 64-65.

theories not advanced in a proceeding below generally cannot be made on appeal.  See United States v. Keesee, 358 F.3d 1217, 1219-20 (9th Cir. 2004); United States v. Patrin, 575 F.2d 708, 712 (9th Cir. 1978).  To the extent that Guthrie is now arguing for the suppression of her admissions regarding the $200 and T-shirt, it appears she may be making an argument that was not made to the court below.

However, even if new arguments for suppression of all statements are not being made and have not been waived, Guthrie argued in her motion that suppression was proper under 18 U.S.C. 3501(c).  That section provides:

> In any criminal prosecution by the United States . . . a confession made or given by a person who is a defendant therein, while such person was under arrest or other detention in the custody of any law-enforcement officer or law-enforcement agency, shall not be inadmissible solely because of delay in bringing such person before a magistrate . . . if such confession is found by the trial judge to have been made voluntarily and if the weight to be given the confession is left to the jury and if such confession was made or given by such person within six hours immediately following his arrest or other detention: Provided, That the time limitation contained in this subsection shall not apply in any case in which the delay in bringing such person before such magistrate or other officer beyond such six-hour period is found by the trial judge to be reasonable considering the means of transportation and the distance to be traveled to the nearest available such magistrate or other officer.

18 U.S.C. § 3501(c).

In determining voluntariness for purposes of 18 U.S.C. § 3501(c), a court:

> [S]hall take into consideration all the circumstances surrounding the giving of the confession, including (1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel; and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession.  The presence or absence of any of the above-mentioned factors to be taken into consideration by the judge need not be conclusive on the issue of voluntariness of the confession.

18 U.S.C. § 3501(b).  Additionally, the Ninth Circuit has held that the "desire of the officers to complete the interrogation is, perhaps, the most unreasonable excuse possible under § 3501(c)."

10

United States v. Wilson, 838 F.2d 1081, 1087 (9th Cir. 1988). However, it is not necessarily unreasonable for officers to complete administrative procedures prior to presenting a defendant to a magistrate. See Kanekoa v. City and County of Honolulu, 879 F.2d 607, 611 (9th Cir. 1989). Administrative steps include "procedures which provide the police with basic information from the suspect" and may include an interview. Id. An interview may inform the police of the suspect's identity, residence, competence, and whether it is safe to release the suspect pending further proceedings. Moreover, an interview may inform the police that the case is no longer worth pursuing. It provides an early opportunity for the suspect to exculpate himself." Id. Administrative police interviews do not violate the Fourth Amendment "if they [are] not for the purpose of building a case." Id.

In this case, the Magistrate Judge did not expressly discuss the suppression request under 18 U.S.C. § 3501. However, the evidence and argument presented to the Magistrate Judge indicated that Guthrie: (1) was taken into custody at approximately 10:00 a.m.; (2) she arrived at the Park holding facility at 11:00 a.m.; (3) she had been booked and most of the administrative procedures were completed at approximately 12:00 p.m.; (3) she was taken to an interview room and read *Miranda* warnings; (4) she stated that she understood and agreed to answer questions and did not ask for an attorney; (5) she signed a *Miranda* waiver at 12:01 p.m.; (6) she admitted the events surrounding her arrest at the beginning of the interview; (7) she volunteered other information despite efforts to stop the interview by the rangers; (8) the interview ceased at approximately 1:30 p.m.; and (9) she was presented to the Magistrate Judge the following day at 1:08 p.m. See E.R. at 43, 47-48, 53-54, 86.

From this evidence, it is unclear what the purpose of the interview was. That the administrative procedures had not yet been completed and that the rangers "began the interview," see E.R. at 48, 53, tends to suggest an administrative interview as envisioned by *Kanekoa*, that the officers asked questions to establish motive, however, suggests interrogation as condemned in *Wilson*. See E.R. at 49, 54. However, the evidence indicates that Guthrie made the

admissions surrounding her arrest for misappropriation and conspiracy approximately a little more than 2 hours after her 10:00 a.m. detention, even though the total time between detention and presentment was approximately 28 hours.[10]  Guthrie did not have an attorney present during the 12:00 p.m. to 1:30 p.m. interrogation/interview.  It appears that Guthrie understood that she was suspected of misappropriation of $200 and the T-shirt since she admitted to the events surrounding her arrest and she was in custody for that conduct.  Guthrie had been advised of her right to counsel and to have counsel present during questioning and that counsel could be appointed if she could not afford one.  Guthrie was also advised that she had the right to remain silent, that anything she said could be used against her in court, and that, even if she decided to answer without a lawyer, she had the right to stop answering at anytime until she spoke with a lawyer.  Of the factors listed under 18 U.S.C. § 3501(b), only the absence of counsel appears to weigh in favor of a finding of involuntariness.  The remaining factors all suggest voluntariness.

        To the extent that Guthrie challenged only admissions relating to crimes other than misappropriation of $200 and conspiracy to misappropriate the T-shirt (as indicated at oral argument on the motion), neither reversal nor remand is appropriate because Guthrie pled guilty to only misappropriating $200 and conspiracy to misappropriate the T-shirt.  To the extent that Guthrie has not waived a challenge to her apparent admission of misappropriating the $200 and conspiracy to misappropriate the T-shirt, Guthrie argued that suppression was appropriate under 18 U.S.C. § 3501(c).  However, the confession appears to have occurred within a little over 2 hours of her detention, and the only factor that favors a finding of involuntariness under the 18 U.S.C. § 3501(b) factors is the absence of counsel.  Since the apparent confession was made within the 6 hour safe harbor of 18 U.S.C. § 3501(c), and the evidence does not suggest involuntariness under 18 U.S.C. § 3501(b), denial of the request to suppress Guthrie's confession regarding the $200 and the T-shirt , which was made as an alternative and within the motion to

---

[10]The Court is unaware of any further interviews, statements, or confessions that Guthrie may have made, other than those occurring between 12:00 p.m. and 1:30 p.m. on April 12, 2005.

dismiss, was appropriate.

## CONCLUSION

Guthrie argues that the Magistrate Judge erroneously denied her motion to dismiss because her 28 hour detention without presentment to a judicial officer violated Rule 5, *Mallory*, the Fourth Amendment, and the local CJA Plan.  However, dismissal is not the general remedy for such violations and Guthrie has not shown that dismissal was appropriate.  In the alternative, Guthrie argued that statements made during the pre-presentment period should be suppressed under 18 U.S.C. § 3501(c).  At the motion to dismiss hearing, Guthrie's counsel appeared to limit the requested suppression to statements made regarding extraneous offenses.  Since Guthrie pled guilty to the offenses for which she was arrested (misappropriation of $200 and the conspiracy to misappropriate a T-shirt) and not to any "extraneous offenses," neither reversal nor remand is necessary.  If the suppression request was not limited and arguments regarding other statements were not waived, the record shows that any confessions about the $200 and T-shirt were made well within 18 U.S.C. § 3501(c)'s 6-hour safe harbor, and four of the five factors for considering voluntariness under 18 U.S.C. § 3501(b) support a finding of voluntariness, given the evidence that was before the Magistrate Judge.  Guthrie has not shown that the Magistrate Judge erroneously denied the alternatively requested 18 U.S.C. § 3501(b) suppression.

Accordingly, IT IS HEREBY ORDERED that Appellant's conviction is AFFIRMED.

IT IS SO ORDERED.

**Dated:     April 18, 2007**              /s/ Anthony W. Ishii
                                                    UNITED STATES DISTRICT JUDGE

13